UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| S2 GROWTH I LLC,<br><br>Plaintiff,<br><br>v.<br><br>ROMULUS CAPITAL MANAGEMENT, LLC; ROMULUS EQUIPMENTSHARE GROWTH III, LP, ROMULUS CAPITAL PARTNERS II, LLC, WELD ADVISORY HOLDINGS, LLC, WARREN CHIA, JOHN DOES 1 THROUGH 10, and NEIL CHHEDA<br><br>Defendants, | Civil Action No. 1:24-cv-10398-RGS |

**MEMORANDUM IN SUPPORT OF DEFENDANTS WELD ADVISORY HOLDINGS AND WARREN CHIA'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Plaintiff S2 Growth LLC ("S2") brings a complaint (the "Complaint") (Doc. No. 1) rife with conclusory allegations, primarily against Defendants Romulus Capital Management, LLC and Romulus Capital Partners II, LLC (together, "Romulus"), Romulus EquipmentShare Growth III LP (the "Fund" or the "Partnership"), and Neil Chheda ("Chheda") (collectively, the "Romulus Defendants"). S2 brings a single count for unjust enrichment against Defendants WELD Advisory Holdings, LLC, ("WELD") and Warren Chia ("Chia") (together, the "WELD Defendants"), which they now move to dismiss. S2 fails to plead diversity jurisdiction, and the state common law claim against the WELD Defendants does not merit supplemental jurisdiction under 28 U.S.C. § 1367, particularly if the Court dismisses the Complaint's federal claims. Even if the Court does see fit to extend jurisdiction to S2's state common law claims, the

Complaint does not bring a viable claim against the WELD Defendants for unjust enrichment both due to the existence of the governing agreements concerning S2's investment in the Fund and because the terms contained therein explicitly allow for the payments S2 now alleges to be wrongful. Furthermore, S2 does not plead sufficient factual allegations to justify disregarding WELD as a corporate entity to assign personal liability to Mr. Chia.

S2's Complaint boils down to an elaborate display of displeasure concerning the operation of two agreements it signed to make a $1.5 million investment in a company called EquipmentShare.com Inc. ("EquipmentShare"). Rather than admit it miscalculated the costs of its investment into the Fund, S2 cries foul based on a portion of a non-specific statement of purpose in a related agreement. It latches upon the largest related, permissible expense to allege malfeasance, due almost entirely to Mr. Chia's LinkedIn profile – the social media biography that launched a multitude of speculative claims before this Court. Sour grapes and conspiracy theories do not merit this Court's indulgence, and the Complaint should be dismissed.

## FACTS

### *(1) Overview*

S2 is a Delaware limited liability company (Compl. ¶ 18) and a self-described accredited investor as defined in 17 C.F.R. § 230.501 (Id. Exhibit 1 at § 2(h) and its **EXHIBIT A**). In or about February 2020, S2 approached Chheda about an opportunity to invest in an EquipmentShare. (Compl. ¶ 3) S2 executed two separate agreements concerning its investment to become a limited partner in the Fund, which is a special purpose vehicle ("SPV"): (1) a Subscription Agreement (Compl. Ex. 1); and (2) the Limited Partnership Agreement of Romulus EquipmentShare Growth III, L.P. (Compl. Exhibit 2) (the "LPA"). (Compl. ¶¶ 4, 33-34.) The

Subscription Agreement addresses the terms and conditions of S2's investment in the Fund, and the LPA governs the terms of its partnership in the Fund itself. (*Id*.) Delaware law governs each agreement. (*Id*. Ex. 1 § 11; Ex. 2 § 14.9.4) As General Partner, the LPA vests Romulus with exclusive powers over the "management, policies, and control" of the Fund. (*Id*. Ex. 2 § 4.1). During the course of negotiations, Chheda, on behalf of Romulus as General Partner of the Fund, entered into a "side letter" reducing S2's liability for potential performance-based distributions related to the Fund. (Compl. ¶ 5) Fourteen of the Subscription Agreement's 61 pages are devoted to disclosing "Risk Factors" in S2's potential investment, such as a warning that "[t]he cost of fees" including but not limited to "virtually all out-of-pocket costs associated with identifying, acquiring, monitoring, improving and disposing Partnership assets…" to be "paid by the Partnership may be very substantial." (*Id*. Ex. 1 at F-8.) Therefore, from the perspective of a prospective limited partner like S2, "when compared with many other types of investment opportunities, the Partnership is relatively high-cost." (*Id*. at F-8 – F-9) Chheda received S2's executed Subscription Agreement and related $1.5 million investment in the Fund on February 26, 2020. (Compl. ¶ 6.)

***(2) WELD and Chia***

Approximately a year later, when S2 received its IRS Form K-1 for its 85.71% limited partnership interest in the Fund, it was "surprise[d]" to discover that it reflected certain charges explicitly set forth in the LPA. (Compl. ¶¶ 9-12) According to the Complaint, Romulus engaged WELD to perform certain services for the Fund, and Romulus allocated WELD's fees to the Fund's Limited Partners under the LPA. (*See id.* at ¶¶ 9-12, 13, 15, 43, 46) Chia founded WELD, with a principal place of business in Massachusetts, as a Delaware LLC in or about 2013.

(Compl. ¶ 23 and Exhibit 4 (the "LinkedIn Profile"))[1] S2 did not pay the disputed fees to WELD directly but does allege that WELD provided paid services to the Fund. (Compl. ¶¶ 43, 46.) Based on the LinkedIn Profile, S2 concluded "on information and belief" that:

- "WELD and Romulus are under common control and the principals of Romulus hold a substantial economic interest in WELD" (Compl. ¶ 13 n1);

- "Romulus and Chheda entered the independent contractor agreements with WELD to funnel unauthorized Monitoring Fees to Romulus' owners at the expense of investing parties, including the Fund…" (Compl. ¶ 16);

- "Romulus entered into agreements with WELD to obtain a share of Plaintiff's investment that it was not entitled to, in contravention of the purpose of the Fund set forth in Section 2.3 of the LPA." (Compl. ¶ 43);

- "[T]he services provided by WELD related to the Fund were substantially less than" the amount reflected on S2's Form K-1. (Compl. ¶ 45);

- "WELD failed to allocate its shared expenses for work performed on behalf of all Romulus limited partnerships pro rata based on the size of each limited partnership. Rather, on information and belief, WELD charges all of the limited partnerships a substantial annual fee regardless of the size of the limited partnership or the amount of work WELD did related to the investment activities of the limited partnership." (Compl. ¶ 47);

According to S2's "information and belief," therefore, WELD engaged in a "scheme" to enrich the Romulus Defendants wrongfully at S2's expense, primarily – if not completely – in breach of LPA § 2.3[2], which provides as follows:

---

[1] S2's allegation is incorrect. Chia formed WELD as a single-member LLC with the State of Delaware on or about March 25, 2014. (Declaration of William G. Cosmas, Jr. ("Cosmas Decl.") ¶ 2, **Exhibit 1**.) The Court "may, if it chooses, consider extrinsic documents such as 'documents the authenticity of which are not disputed by the parties; ... official public records; ... documents central to the plaintiff's claim; [and] ... documents sufficiently referred to in the complaint' without turning the 12(b)(6) motion into a motion for summary judgment" *Newman v. Lehman Bros. Holdings, Inc.*, 901 F.3d 19, 25 (1st Cir. 2018) (internal citations and quotations omitted).

[2] S2's Complaint includes two footnotes – to ¶¶ 14 and 46 – citing other litigation involving "Romulus/Chheda" allegedly concerning fees paid to WELD. Whatever other cases might be pending bears no relevance to the Complaint and instead S2 begs the Court to indulge the *ad populum* logical

> **2.3 PURPOSE; POWERS.**
> The primary purpose of the Partnership is to seek to generate significant returns for its Partners, primarily by making an investment in preferred stock of EquipmentShare.com Inc., a Delaware corporation (the **"Target Company"**). Subject to the provisions of this Agreement, the Partnership may engage in any activity that is lawful for, and shall have all of the powers available to, a limited partnership formed under the Delaware Act.

Only one of the Complaint's seven Counts (Count II) purports to bring a claim against the WELD Defendants (the "WELD Count") – a common law claim for unjust enrichment under Delaware law against both WELD and Chia, individually.

**ARGUMENT**

The WELD Count fails for a number of independent reasons. First, S2 does not establish diversity jurisdiction under 28 U.S.C. § 1332. Second, the Court should exercise its discretion under 28 U.S.C. § 1367 to decline subject matter jurisdiction over the Complaint's state law claims, particularly upon the dismissal of S2's federal question claims. Even if the federal claims stand, however, the Court should decline supplemental jurisdiction over the WELD Count, which involves different facts and witnesses from the remainder of the Complaint. Should the Court choose to exercise supplemental jurisdiction over the WELD Count, it should be dismissed as a matter of law. Given the clear and unequivocal language in the governing contracts, S2 cannot show without appeal to conclusory allegations that any fees paid to WELD were unjust. Even if it could, S2 cannot pierce the corporate veil to allege claim against Chia, individually.

---

fallacy, best illustrated by the famous Elvis Presley compilation entitled "50,000,000 Elvis Fans Can't Be Wrong" (RCA Victor Records, 1959).

## I. **<u>S2's Subject Matter Jurisdiction Problem</u>.**

"A court without jurisdiction is like a king without a kingdom: both are powerless to act." *Lawless v. Steward Health Care Sys, LLC,* 894 F.3d 9, 16 (1st Cir. 2018). Federal district courts are "courts of limited jurisdiction" possessing "only that power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allapattah Serv., Inc.,* 545 U.S. 546, 552 (2005). S2 invokes this Court's jurisdiction based on both diversity of citizenship (28 U.S.C. § 1332) and federal question (28 U.S.C. § 1331) grounds. The former is deficient, and the latter is not dispositive concerning the Court's exercise of jurisdiction over S2's state and common law claims.

### ***(1) S2 Fails to Plead Subject Matter Jurisdiction based on Diversity of Citizenship.***

Diversity jurisdiction exists so that federal courts can "adjudicate controversies between citizens of different states." *BRT Mgmt. LLC v. Malden Storage, LLC,* 68 F.4th 691, 695 (1st Cir. 2023). Such diversity "must be complete; that is, no plaintiff may be a citizen of the same state as any defendant," and the burden to show that diversity falls on the party seeking federal jurisdiction. *Id.* at 696. Except for Chheda and Chia, the parties consist of limited liability companies and limited partnerships, otherwise known as "unincorporated entities," which "take[] the citizenship of all of [their respective] members." *See id.*; *DB Swirn Special Opportunities Fund LP v. Mehrotra,* 661 F.3d 124, 126 (1st Cir. 2011) (citizenship of limited partners). In contrast to how S2 pleads diversity jurisdiction (Compl. ¶¶ 18-26), the inquiry does not end at the entity level. Instead, the process is "iterative," requiring a party asserting diversity jurisdiction to "trace the citizenship of any member that is an unincorporated association through however many members or partners there may be." *BRT Mgmt.*, 68 F.4th at 696 (*<u>quoting</u>* *DB Zwirn*, 661 F.3d at 126-27). What S2 has done is "plainly insufficient." *Id.* at 693.

Because S2 failed to allege the citizenship of the members or partners of each unincorporated entity (including itself) in the Complaint – and that of every unincorporated entity that may be a member or partner thereof, at every applicable level – it failed to properly allege diversity jurisdiction. *See id*. at 693-94. S2 bears the burden on this point, it has not done so, and therefore this Court lacks diversity jurisdiction over this matter.

***(2) Upon Dismissal of S2's Federal Claims, S2's State Law Claims Should be Dismissed for Lack of Jurisdiction.***

Since S2 has not plead diversity jurisdiction effectively, the only remaining basis for the Court's subject matter jurisdiction over the Complaint's state law claims would be supplemental to its federal claims under 28 U.S.C. § 1331. (Compl. ¶ 27.) To the extent that this Court dismisses those federal claims, it should dismiss the Complaint's remaining state law claims pursuant to 28 U.S.C. 1367(c)(3). *See, e.g., Rectrix Aerodrome Ctrs., Inc. v. Barnstable Mun. Airport Comm'n,* 632 F. Supp. 2d 120, 132 (D. Mass. 2009) (Stearns, J.) ("All of the claims over which this court has original jurisdiction having been dismissed, the court (consistent with its customary practice) will decline to exercise supplemental jurisdiction over the remaining state law claims"); *see also Cranston Firefighters, IAFF Local 1363, AFL-CIO v. Raimondo,* 880 F.3d 44, 52 (1st Cir. 2018) ("[T]he early dismissal of the federal claims… generally calls for a refusal to continue exercising jurisdiction over any supplemental claims."). S2's Complaint provides no reason to vary from this practice.

***(3) This Court Should Dismiss the Claim (Count II) Against WELD and Chia for Lack of Subject Matter Jurisdiction.***

Even if the Court does not dismiss the federal claims, 28 U.S.C. § 1367 should not provide the basis for supplemental jurisdiction over S2's single, state common law claim against

the WELD Defendants. Section 1367 provides federal jurisdiction over state law claims arising from "a common nucleus of operative facts… such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding…" but the Court's discretion to assert jurisdiction "need not be exercised in every case in which it is found to exist," with key considerations including "judicial economy, convenience, and fairness to litigants." *United Mine Workers v. Gibbs,* 383 U.S. 715, 725-26 (1966). For instance, the Court may exercise its discretion under 28 U.S.C. § 1367(c) to decline supplemental jurisdiction and dismiss claims where "[t]he facts and witnesses as to the two sets of claims are essentially different, not common". *Serrano-Moran v. Grau-Gaztambide,* 195 F.3d 68, 69 (1st Cir. 1999).

*(a)* *The facts and witnesses will be different for the WELD Count*.

S2 brings no federal claim against WELD and Chia, instead pleading a single count of unjust enrichment, apparently seeking restitution damages, on the elements for such a claim under Delaware law (Compl. ¶¶ 57-62). *See Nemec v. Shrader,* 991 A.2d 1120, 1130 (Del. 2010). The WELD Count solely raises questions of state law – and the only connection to the any of S2's claims against the Romulus Defendants is that Romulus paid WELD to perform services for the Fund, and part of those fees came from S2's investment in the Fund. S2 alleges those funds should have been devoted purely to the performance of that investment, under the terms of a contract to which the WELD Defendants were strangers. In other words, S2's actual fight is with the Romulus Defendants. Relevant evidence would include, for instance, the Governing Agreements and alleged oral representations by the Romulus Defendants to S2 in connection with a side letter. No part of those facts, related discovery, or the elements required to prove S2's allegations match those required to prove the unjust enrichment count against the WELD

Defendants – because the gravamen of S2's complaint concerns its relationship and transactions with the Romulus Defendants. *See Schaefer v. Yongjie Fu*, 322 F. Supp. 3d 207, 210 (D. Mass. 2018) (finding that claims against two defendants did not arise out of the same nucleus of operative fact where "the facts necessary to prove [plaintiff's] state law claim [against an individual defendant] are not 'practically the same' as those necessary to prove plaintiff's federal question claim" against a separate defendant). This is not a case in which the WELD Defendants' conduct formed the basis for the allegations making up the underlying federal question claims against the Romulus Defendants. *See Fisher v. Somerville Sch. Dist.*, 874 F. Supp. 448, 450 (D. Mass. 1995) (allowing supplemental jurisdiction under § 1367(c) because state law claims against defendant formed the basis for the federal question claims in the matter). WELD merely earned fees that S2 alleges Romulus improperly paid. S2 – if successful – can and should recover from the Romulus Defendants. Whether or not the WELD Defendants remain parties to this matter has no bearing on S2's case against them.

S2 also admits that WELD performed work in connection with the payments it received from the Fund. (Compl. ¶ 46.) To the extent S2 seeks damages independent from those available under an innocent restitution theory, proving unjust enrichment would require examination of invoices and other WELD records to determine the propriety of fees under the contract between WELD and Romulus. That evidence – concerning performance under a contract S2 has no standing to enforce – necessarily differs from the evidence needed to show that the Romulus Defendants somehow misled or violated contractual and/or equitable duties to S2. *See Serrano-Moran*, 195 F.3d at 69.

*(b)* *S2 relies on conclusory allegations and conjecture to link the WELD Defendants to its allegations against the Romulus Defendants*.

Any connection to the Complaint's common nucleus of operative facts frays under the weight of conclusory allegations. Virtually everything S2 pleads to support the existence of a nefarious scheme between the WELD Defendants, Romulus, and Chheda rests "on information and belief," which is no substitute for well-pleaded facts. *See Menard v. CSX Transp. Inc.*, 698 F.3d 40, 44 (1st Cir. 2012) ("[Plaintiff] says the allegation is made 'on information and belief'; but if he had any facts to support this assertion, they should have been set forth. 'Information and belief' does not mean pure speculation.") Under Rule 8, "conclusory statements must rest on pleaded facts. This is so not only of legal boilerplate… but also of assertions nominally cast in factual terms but so general and conclusory as to amount merely to an assertion that unspecified facts exist to conform to the legal blueprint." *Id.* at 45; *see Gianfresco v. Wrentham*, 712 F.3d 634, 639 (1st Cir. 2013) ("An 'unadorned, the-defendant-unlawfully-harmed-me accusation' will not due for purposes of proper pleading under Rule 8) (*quoting Ashcraft v. Iqbal,* 556 U.S. 662, 663 (2009)). Such threadbare allegations cannot make the WELD Count a natural part of S2's the case against the Romulus Defendants.

To link WELD at all to its allegations against the Romulus Defendants, S2 leans upon Chia's LinkedIn Profile – notably, by definition, an unsworn personal marketing device – that it almost entirely misconstrues. (Compl. ¶¶ 13, 14, 23.), S2 alleges both that WELD "was organized for the purpose of charging unauthorized monitoring expenses to many of Romulus' partnerships, including the Fund, in violation of Romulus' fiduciary duties owed to the limited partners," and that Chia "is a Founder of Romulus Capital Partners." (*Id*. ¶¶ 13-14.) The

LinkedIn Profile directly contradicts those allegations, stating instead that Mr. Chia founded WELD in or about 2013 and became a Partner at Romulus in or about 2019.[3] Temporally, such statements are illogical and show the speculative nature of S2's claims. The Court should disregard them and reject any related allegation that Chia established WELD *six years before purportedly joining Romulus* for purposes of any alleged fraud or to somehow play a part in the Romulus Defendants' alleged misconduct. *Yacubian v. U.S.*, 750 F.3d 100, 108 (1st Cir. 2014); *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 n3 (1st Cir. 2012) (documents attached to complaint "trump the complaint's allegations if a conflict exists.").

The LinkedIn Profile constitutes the sole discernable basis for S2's otherwise unsupported allegation that WELD and Romulus are under common control (Compl. ¶ 23) Setting aside the dubious factual support a LinkedIn profile might provide,[4] "under Massachusetts law, the fact that parties referred to themselves as partners is not enough to create a partnership." *Gallant v. Boston Exec. Seach Assocs., Inc.*, C.A. No. 13-cv-12081, 2015 WL 5044339 at *11-12 (D. Mass. June 12, 2015) (*citing Martin v. Stone*, 332 Mass. 540, 546 (1955) ("It is not enough that the parties referred to each other as partners."); *see also* 6 Del. C. § 15-202. In other words, the LinkedIn Profile cannot form the basis for an allegation that Chia shared in

[3] Further undermining the value of his LinkedIn profile, Chia formed WELD as a single-member Delaware LLC on March 25, 2014. (Cosmas Decl. **Ex. 1**.)

[4] *See, e.g.*, *Rockwell Automation, Inc. v. EU Automation, Inc.*, C.A. No. 21-cv-1162-MN-MPT, 2022 WL 1978726 at *10 (D. Del., Jun. 6, 2022) (Plaintiff's alter ego allegations "are merely plead on 'information and belief.' Its 'evidentiary support' are printouts of LinkedIn profiles. Even viewing the facts in the light most favorable to plaintiff, the court finds its allegations insufficient to support a prima facie showing of specific jurisdiction…"); *Walters v. Angiodynamics, Inc.*, C.A. No. 21-cv-11225-ADB, 2021 WL 5040331 *5 (D. Mass. Jun. 12, 2015) (LinkedIn profiles showing employees located in Massachusetts insufficient support for jurisdictional claim).

Romulus Capital's profits and losses or participated in the control or management of the enterprise – both key to the existence of a partnership under both Massachusetts and Delaware law. *See Kansallis Fin. Ltd. v. Fern*, 240 F.3d 476, 478-79 (1st Cir. 1994) (applying Massachusetts law); 6 Del. C. § 15-401 (b), (f).

## II. <u>S2's Unjust Enrichment Claim Fails.</u>

S2's unjust enrichment claim against the WELD Defendants fails at least two reasons. First, the LPA explicitly allows for payments to entities like WELD – and S2 does not allege that any of these payments exceeded the amount allowed under the LPA. Second, Delaware law precludes unjust enrichment where claims arise from or relate to a contractual relationship – here, the relationship between the Romulus Defendants and S2.

### *(1) The LPA explicitly allows for payments to WELD.*

The crux of S2's unjust enrichment claim is that the funds paid to WELD "were intended to 'generate significant returns for its Partners (Plaintiff) primarily by making an investment in preferred stock of EquipmentShare.com Inc." in breach of LPA § 2.3. (Compl. ¶¶ 55, 60.)[5] Therefore, the WELD Count rises or falls upon whether paying WELD constituted such a breach. "Limited partnership agreements are a type of contract," and therefore Delaware courts "construe them in accordance with their terms to give effect to the parties' intent… giv[ing] words their plain meaning unless it appears that the parties intended a special meaning." *Norton v. K-Sea Transp. Partners, L.P.*, 67 A.3d 354, 360 (Del. 2013). To interpret a contract, Delaware courts "read the agreement as a whole and enforce the plain meaning of clear and

[5] Despite pleading numerous fraud-related counts against the Romulus Defendants, S2 does not plead breach of the implied covenant of good faith and fair dealing.

unambiguous language." *Manti Holdings, LLC v. Authentix Acquisition Co., Inc.*, 261 A.3d 1199, 1208 (Del. 2021). Each of the contract's terms and provisions are given effect based on their plain meaning, taking care not to render any of them "meaningless or illusory." *Id.* "An interpretation is unreasonable if it 'produces an absurd result' or a result 'that no reasonable person would have accepted when entering the contract.'" *Id.* (*citations omitted*). However, "[a] meaning inferred from a particular provision cannot control the agreement if that inference conflicts with the agreement's overall scheme." *Norton,* 67 A.3d at 360. Ultimately, "[i]f a writing is plain and clear on its face, i.e., its language conveys an unmistakable meaning, the writing itself is the sole source for gaining an understanding of intent." *Holifield v. XRI Inv. Holdings, LLC,* 304 A.3d 896, 924 (Del. 2023) (*internal quotations omitted*). Examining the LPA's plain terms reveals S2's interpretation of the LPA to be unreasonable as a matter of law.

For example, at least two provisions of the LPA allow the sort of "collusion" that S2 alleges between the WELD Defendants and the Romulus Defendants.

- Section 3.4.3 of the LPA permits the General Partner to engage in transactions with any Affiliates[6] – as S2 alleges the WELD Defendants to be – "except to the extent **specifically** prohibited by this Agreement" and "without any liability to the Partnership or any Partners." (*emphasis added*). No such prohibition exists, or else S2 would have cited it in the Complaint.

- Section 3.5.2 of the LPA permits "any Partner" to participate in any "other financial ventures and investment activities of any kind, nature and description… whether or not such activities may conflict with any interest of the Partnership or any of the Partners."

[6] The LPA defines "Affiliate" to include a "Person that directly or indirectly through one or more intermediaries, controls or is controlled by, or is under common control with" the General Partner or the members of the General Partner (including Chheda). (LPA at I-1, I-3, I-4.)

Therefore, the LPA's clear and unambiguous permits transactions with WELD, even if Chia, as alleged, is a Romulus partner and WELD an Affiliate. S2 cannot ignore these provisions.

Most glaringly, the clear, unambiguous language of LPA § 5.1.1 states that the Partnership, by and through the Limited Partners, "shall bear and be responsible for all expenses of the Partnership (**"Partnership Expenses"**)" up to $500,000, with the General Partner paying any overage. S2 agreed to be responsible for its share of the Partnership Expenses – which, given its 85.71% ownership interest in the Fund, could reach 85.71% of the $500,000 maximum – or $428,550 (which is over $8,000 less than its allocated loss). Partnership Expenses explicitly include "Monitoring Expenses of the Partnership," defined to consist of, to the extent they relate "to the investment activities of the Partnership: compensation and expenses of employees or consultants of the General Partner or the Management Company (as applicable); and fees and expenses for administrative, clerical and related support services provided by third parties…" (LPA at I-5.)[7] Monitoring Expenses made up $321,413 of S2's $420,313 allocated loss in 2020 – well below the limit set forth in LPA § 5.1.1. (Compl. ¶¶ 12, 39.) "Information and belief" alone cannot support S2's allegations that WELD improperly charged and/or attributed these fees, given S2's complete speculation concerning the relationship between WELD and Romulus. *See Menard*, 698 F.3d at 44-45; *Gianfresco*, 712 F.3d at 639. Further, interpreting the LPA to prohibit allocation of Partnership-related fees specifically allowed by the LPA's terms – particularly where the Subscription Agreement references the costs of an investment in the Fund – would produce an absurd result. *See Manti Holdings*, 261 A.3d at 1208.

[7] Partnership Expenses also include "[a]ll other expenses properly chargeable to the activities of the Partnership."

***(2) The LPA bars S2's Unjust Enrichment Claim.***

S2 alleges throughout the Complaint that the Fund's payments to WELD breached Section 2.3 of the LPA. (*See* Compl. ¶¶ 17, 38, 39, 43, 52, 53, 55). This is fatal to the WELD Count. Delaware law precludes claims for unjust enrichment arising out of a contractual relationship, even when brought against a stranger to that contract. *See Nemec,* 991 A.2d at 1130 (conduct not unjust because it arose from the operation of a contract); *Wells Fargo Bank, N.A. v. Estate of Malkin,* 278 A.3d 53, 70 (Del. 2022) (restitution unavailable from defendant if breach of contract claim exists against other party).[8]

Delaware, like Massachusetts, allows for restitution damages to "deprive the defendant of benefits he ought not keep, even though he may have received those benefits honestly in the first instance…" *See Fleer Corp. v. Topps Chewing Gum, Inc.,* 539 A.2d 1060, 1063 (Del. 1988); *Sacks,* 488 Mass. at 790-791. But those cases arise under purely equitable circumstances and in the absence of any sort of contract relating to the benefit itself. *See Fleer Corp.* at 1063 (baseball card company required to pay restitution to rival based on funds received while court order prevented rival from competing); *Schock v. Nash,* 732 A.2d 217, 232 (Del. 1999) (restitution ordered from individuals who obtained benefits via attorney-in-fact's misconduct); *Sacks,* 488 Mass. at 790-791 (unjust enrichment claim derived from tortious conduct of another, not from

[8] The same principle applies under Massachusetts law. *See Platten v. HG Bermuda Exempted Ltd.,* 437 F.3d 118, 130 (1st Cir. 2006).

instrument).[9] That is not the case here, where the Governing Agreements concern (a) the relationship between the Romulus Defendants and S2; and (b) the payments to WELD.

## III. S2 Fails to State a Claim against Chia under Fed. R. Civ. P. 12(b)(6)

Despite the multitude of threadbare, conclusory allegations concerning his connections to the Romulus Defendants, S2's only claim against Chia arises from his membership in WELD. (Compl. ¶¶ 13, 23, 41.) That is not enough. WELD charged Romulus (*Id.* at ¶¶ 15, 35) and received payments from Romulus (*Id.* at ¶ 13) under an independent contractor agreement between WELD and Romulus (*Id.* at ¶ 15). S2 makes no allegation that Chia executed any of those agreements in his personal capacity. *See McCarthy v. Azure*, 22 F.3d 351, 356 (1st Cir. 1994) ("a person signing a contract only in a corporate capacity, and unambiguously indicating that fact on the face of the contract documents, does not thereby become a party to the agreement."). WELD performed the work for Romulus, and WELD received the payments. (Compl. ¶¶ 39, 45-46) "Persuading a Delaware court to disregard the corporate entity is a difficult task." *Wallace ex rel Cencom Cable Income Partners II, Inc. v. Wood,* 752 A.2d 1175, 1183 (Del. Ch. 1999).[10] S2 does not allege that WELD is Chia's alter ego or make any other plausible, fact-based allegations sufficient to pierce WELD's corporate veil. WELD performed paid work on behalf of Romulus (Compl. ¶¶ 45-46), meaning it is not a "sham" entity. *See id.* at 1184 ("Effectively, the

---

[9] In *Schock*, the Delaware Supreme Court also noted the difference between breach of fiduciary duty under pure equitable conditions and those, like in this case, that arise in a corporate context and "provide statutory modifications to the common law of fiduciary duty. "*Schock*, 732 A.2d at 225.

[10] Under both Massachusetts and Delaware law, Delaware law applies to a corporate veil analysis because WELD is a Delaware LLC. *See Lily Transp. Corp. v. Royal Inst'l Servs., Inc.,* 64 Mass. App. Ct. 179, 188 n15 (2005); *In re Washington Mut., Inc.,* 418 B.R. 107, 113 (Bank. D. Del. 2009) (*citing Rosenmiller v. Bordes,* 607 A.2d 465, 468 (Del. Ch. 1991); *In re Cambridge Biotech Corp.,* 186 F.3d 1356, 1376 n.11 (Fed. Cir. 1999).

corporation must be a sham and exist for no other purpose than as a vehicle for fraud.”). Therefore, S2 fails to state a claim against Chia, individually, and he should be dismissed from this matter.

**CONCLUSION**

For the reasons set forth above, this Court should grant the WELD Defendants’ *Motion to Dismiss* and dismiss the claims against Defendants WELD Advisory Holdings, LLC, and Warren Chia, with prejudice.

WELD ADVISORY HOLDINGS, LLC and WARREN CHIA

By their attorneys,

*/s/ William G. Cosmas, Jr.*

Payal Salsburg (BBO #568812)
William G. Cosmas, Jr. (BBO #670631)
LAREDO & SMITH, LLP
101 Federal Street, Suite 650
Boston, MA 02110
(617) 443-1100
salsburg@laredosmith.com
cosmas@laredosmith.com

Dated: May 6, 2024

**CERTIFICATE OF SERVICE**

I hereby certify that a copy the foregoing document was served by ECF on counsel of record for all parties on May 6, 2024.

*/s/ William G. Cosmas, Jr.*
William G. Cosmas, Jr.