UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| S2 GROWTH I LLC, )<br> )<br> Plaintiff, )<br> )<br> v. )<br> )<br>ROMULUS EQUIPMENTSHARE GROWTH II LP, )<br>ROMULUS EQUIPMENTSHARE GROWTH III LP, )<br>ROMULUS CAPITAL PARTNERS II, LLC, )<br>WELD ADVISORY HOLDINGS, LLC, WARREN CHIA )<br>and )<br>NEIL CHHEDA, )<br> )<br> Defendants. ) | Case No. 1:24-cv-10398-RGS |

**PLAINTIFF'S BRIEF IN OPPOSITION TO JOINT MOTION TO DISMISS OF DEFENDANTS NEIL CHHEDA, ROMULUS EQUIPMENTSHARE GROWTH II LP, ROMULUS EQUIPMENTSHARE GROWTH III LP AND ROMULUS CAPITAL PARTNERS II, LLC**

I. **INTRODUCTION**

This case is about Defendants charging Plaintiff over $400,000 in monitoring expenses that were grossly overpriced and either unnecessary or outright fictitious. The Subscription Agreement between Plaintiff S2 Growth I, LLC ("Plaintiff"), on the one hand, and Defendants Romulus Capital Management, LLC, Romulus EquipmentShare Growth III LP, and Romulus Capital Partners, II LLC (collectively, "Romulus"), on the other hand, only authorizes partnership expenses that are **"associated with the organization, existence, and operations of the Partnership."** The related Limited Partnership Agreement provides at Section 2.3 that the purpose of the fund is to **"seek to generate significant returns for its Partners primarily by making an investment in preferred stock of EquipmentShare.com Inc."**

The Romulus Defendants' arguments supporting their Motion to Dismiss are based on the

faulty premise that because the Subscription Agreement permits partnership expenses "up to $500,000," any expense charged "up to $500,000" is *per se* legal. Defendants ignore, however, the fact that the parties agreed in writing that partnership expenses must be "associated with the organization, existence, and operations of the Partnership." The Romulus Defendants do not provide any justification as to how the $321,413 "advisory fee" and related fees actually relate to the partnership so as to constitute lawful partnership expenses. Because the advisory expenses at issue are not authorized by the pertinent contracts and are not lawful, the Romulus Defendants' Motion to Dismiss must be denied.

## II.     RELEVANT FACTS

The pertinent question at this stage of the case is whether the $321,413 "advisory fee" paid to WELD Advisory Holdings is authorized by the Subscription Agreement and Limited Partnership Agreement. The Romulus Defendants' arguments are premised on the idea that "the limited partnership and subscription agreements expressly provide for these specific fees *up to $500,000*." All of the Romulus Defendants' dismissal arguments turn on whether the agreements expressly provide for and authorize these fees. The Romulus Defendants posit that, because the agreements contemplated these fees, Plaintiffs were aware of them at the time they signed the agreements and approved them. Therefore, the Romulus Defendants assert that Plaintiff's claims are subject to dismissal.

The Limited Partnership Agreement and Subscription Agreement, however, do not expressly provide for, let alone authorize, the "advisory fee." It is inconceivable Plaintiff could have been aware of the approximate $400,000 in fees at issue in this case when the agreements were executed. Neither Plaintiff nor a reasonable investor would have invested $1.5 million in the

fund if it was apparent from the contracts' terms that $400,000 of the investment would be consumed by fees for fictitious services.

The Romulus Defendants promised in the contracts that only expenses/fees, including monitoring fees that are **"associated with the organization, existence, and operations of the Partnership,"** would be charged to Plaintiff.  Because the partnership holds only a contractual right to equity in a single company (EquipmentShare), the partnership does not require any strategic investment guidance.  Nor does the partnership require any third-party service to monitor the activities and trajectory of EquipmentShare, which the Romulus entities are already doing in light of its multiple other significant investments in EquipmentShare.  Plaintiff entered into the Limited Partnership Agreement and Subscription Agreement in reliance on the Romulus Defendants' promises <u>contained in the contracts</u> that only fees/expenses <u>associated with the partnership</u> would be charged.  Had the Romulus Defendants been up front in disclosing that a blanket fee of nearly $400,000 would be charged, regardless of whether the fee is actually associated with the organization, existence, and operations of the Partnership, Plaintiff would not have entered into the agreements.

The pertinent contractual language is in the "Expenses" section of the Subscription Agreement (Compl. Ex. 1) and in Section 5.11 of the Limited Partnership Agreement

> ***Expenses***. The Partnership's Partnership Agreement contains detailed provisions regarding the apportionment of expenses to the Partnership. As a general matter, the Partnership must pay ==all expenses associated with the organization, existence and operations of the Partnership.== As described in the Partnership Agreement, expenses to be borne by the Partnership generally include, without limitation, expenses associated with the costs of marketing/placing interests in the Partnership, legal and other fees associated with the formation of the Partnership (including fees charged by attorneys representing the General Partner/Partnership for negotiations with prospective Limited Partners), virtually all out-of-pocket costs associated with identifying, acquiring, monitoring, improving and disposing of Partnership investments, most costs associated with litigation (or threats of litigation) against the Partnership, the General Partner, the Management Company, or the members/employees of the General Partner or the Management Company, the costs of preparing Partnership financial statements, tax returns and other reports, the fees of attorneys, accountants, consultants, brokers, advisors and other third parties, and costs associated with certain securities law and similar compliance obligations imposed upon the General Partner or the Partnership. The cost of fees paid by the Partnership may be very substantial.

> **5.1.1  Partnership Expenses.**
>
> The Partnership shall bear and be responsible for all expenses of the Partnership ("**Partnership Expenses**").  Partnership Expenses shall include, without limitation: (a) Organizational Expenses and Monitoring Expenses of the Partnership; (b) any sales or other taxes, fees or government charges which may be assessed against the Partnership; (c) commissions or brokerage fees or similar charges incurred in connection with the purchase or sale of securities (including any merger fees payable to third parties and whether or not any such purchase or sale is consummated); (d) the costs and expenses (including travel-related expenses) of annual or special meetings of the Partnership or otherwise holding meetings or conferences with Limited Partners, whether individually or in a group; (e) interest expense for borrowed money; (f) expenses attributable to normal and extraordinary investment banking, commercial banking, accounting, auditing, appraisal, tax advisory, legal, external consulting, custodial and registration services provided to the Partnership, including in each case services with respect to the proposed purchase or sale of securities by the Partnership that are not reimbursed by the issuer of such securities or others (whether or not any such purchase or sale is consummated); (g) travel and other expenses related to the investment activities of the Partnership; (h) reasonable premiums for liability insurance to protect the Partnership, the General Partner, the Management Company, and any of their respective partners, members, stockholders, officers, directors, employees, agents or Affiliates in connection with the activities of the Partnership; (i) the costs of dissolving the Partnership and liquidating its assets; (j) all expenses relating to litigation and threatened litigation involving the Partnership, (k) indemnification expenses and (l) all other expenses properly chargeable to the activities of the Partnership. The Partnership Expenses set forth in clauses (a)-(i), and (l) shall not exceed $500,000.  The General Partner shall bear and be responsible for any such excess amount.

(Compl. Ex. 2).  Romulus asserts that because the Limited Partnership Agreement permits expenses that shall not exceed $500,000, any charged fee below this amount is expressly contemplated by the agreements and lawful.  But that construction of the contract requires other terms to be ignored.  Critically, the Subscription Agreement defines the partnership fees as those which are "associated with the organization, existence, and operations of the Partnership."  Additionally, Section 2.3 of the Limited Partnership Agreement states that the enumerated purpose of the Fund is to "seek to generate significant returns for its Partners primarily by making an investment in preferred stock of EquipmentShare.com Inc."  (*Id.*)  In other words, while the relevant provisions allow for expenses associated with the fund, they do not allow for unlawful, fraudulent, and unreasonable expense.

Romulus does not argue that these fees were actually associated with the organization, existence, and operations of the Partnership, because they were not.  The monitoring expense and related fees charged to Plaintiff were not contemplated by the agreements and are unlawful.  Therefore, all of Plaintiff's claims are viable.

### III. LAW AND ARGUMENT

#### A. Standard of Review

In ruling on a motion to dismiss, the court must construe the plaintiff's complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in the plaintiff's favor. *Aversa v. United States*, 99 F.3d 1200, 1209-10 (1st Cir. 1996); *Griffin v. Fbira Bos., Inc.*, 2024 U.S. Dist. LEXIS 91649, *3.

#### B. The Court has Subject Matter Jurisdiction

Plaintiff has properly plead claims under the Exchange Act such that this Court has Federal Question Jurisdiction over Plaintiff's claims. Alternatively, this Court has Diversity Jurisdiction over the claims in this case[1]. All three of the individual members of Plaintiff are domiciled in Texas. (Corp. Disc., ECF No. 4). The individual members of Romulus Capital Management, LLC are: Neil Chheda, domiciled in Massachusetts; Krishna K. Gupta, domiciled in Massachusetts; Joey Kim, domiciled in Tennessee; and Warren Chia, domiciled in Massachusetts. The individual members of Romulus Equipment Share Growth III LP are William Schlacks and Jabbok Schlacks, both domiciled in Missouri. The individual members of Capital Partners II, LLC are domiciled in Massachusetts, according to a 2018 SEC Form D Notice of Exempt Offering of Securities Chheda filed in 2018. The individual members of Weld Advisory Holdings, LLC are: Warren Chia, domiciled in Greater Boston; Joey Kim, domiciled in Tennessee; and William and Jabbok Schlacks, both domiciled in Missouri. Therefore, there is complete diversity of parties. Plaintiff intends to seek leave to amend the Complaint to disclose the domicile of the individual members of Defendants. Accordingly, this Court has jurisdiction over this case through both Federal

---

[1] None of the Defendant corporate entities individual members are domiciled in Texas or Utah. Therefore, there is complete diversity of parties. Information regarding the individual members and domicile listed in this paragraph was obtained through public records.

Question and Diversity Jurisdiction.

### C. The Elements of the Exchange Act Claim are Sufficiently Plead

Plaintiff has pled all of the elements required pursuant to the PSLRA and Rule 9(b) in the Complaint. To allege a violation of Section 10(b) of the Exchange Act and Rule 10(b)-5 thereunder, a plaintiff must plead (1) material misrepresentations and omissions; (2) scienter; (3) reliance upon the misrepresentations or omissions; and (4) loss causation.

In Paragraph 64 of the Complaint, Plaintiff pleads that it relied upon misrepresentations that there would be "no management fees" and relied upon the express terms of the Limited Partnership Agreement and Subscription Agreement. Neither agreement spelled out that any monitoring fees not associated with the Fund would be charged. In Paragraph 75 of the Complaint, Plaintiff pleads that "Romulus and Chheda made these statements and omissions with scienter, knowing that these representations were false or with reckless indifference to their truth or falsity." There is no question the Romulus Defendants' misrepresentations (with respect to "no management fees") and omissions (by failing to disclose in the Limited Partnership Agreement and Subscription Agreement that monitoring fees which are not associated with the partnership would be charged) constitute scienter. In Paragraph 77 of the Complaint, Plaintiff pleads that it actually and justifiably relied on these misrepresentations/omissions when it made a $1.5 million investment in the Fund. In Paragraph 78 of the Complaint, Plaintiff pleads that it was damaged in excess of $400,000 when the phantom monitoring fee was charged.[2] Therefore, because all inferences must be construed in favor of Plaintiff at this stage, Plaintiff has sufficiently plead a

---

[2] The Romulus Defendants spend a lengthy portion of their Motion to Dismiss arguing that there were no misrepresentation/omissions and a strong inference of scienter based on the e-mail negotiations. Plaintiff's Complaint establishes these elements. Regardless, the final executed Limited Partnership Agreement and Subscription Agreement fail to disclose that a monitoring fee which is not associated with the Partnership would be charged. Therefore, the omission and strong inference of scienter is established in the Limited Partnership Agreement and Subscription Agreement as those documents failed to disclose the phantom fee, and it is axiomatic Defendants had scienter by charging the phantom fee.

claim under Section 10(b) of the Exchange Act and Rule 10(b)-(5) thereunder.

### D. The Fraudulent Inducement Claim is Sufficiently Plead

Plaintiff's fraudulent inducement claim survives for the same reasons that its Exchange Act claims survive. Under Delaware law, the elements for fraudulent inducement are identical to Exchange Act claims. *Cipercen v. Morningside Texas Holdings, LLC*, 2022 WL 4243687, at * 5 (Del. Super. Sept. 14, 2022). Accordingly, construing all inferences in favor of Plaintiff, Plaintiff has sufficiently plead a claim for fraudulent inducement.

### E. The Exchange Act Claim is not barred by the Statute of Limitations

The Romulus Defendants assert that the Exchange Act claims are barred by the Statute of Limitations because "the statute of limitation begins to run – when it has access to investment documents that contradict what plaintiff alleges was misstated." The Romulus Defendants argue that the two-year statute of limitations expired on February 20, 2023.

While it is true that Plaintiff "realized" that it was damaged in excess of $400,000 on February 20, 2021, when it received a K-1 form delineating the phantom advisory fee, Plaintiff did not discover that Defendants had scienter, a mental state embracing intent to deceive, manipulate, or defraud until at least March 22, 2022. For over a year after Plaintiff learned of the advisory fee, Plaintiff sought to rectify the situation with Defendants. Indeed, Plaintiff did not have confirmation that similar phantom monitoring fees were being charged to other investors until it became aware of a similar lawsuit against Defendants filed herein on March 22, 2022. *See Republic Maximal LLC v. Romulus EquipmentShare Growth LP*, Case No. 1:22-cv-10429-MLW; *see also* Complaint at FN 2. When Plaintiff discovered the Republic Maximal lawsuit, it knew for the first time that the Romulus Defendants acted with bad intent, establishing scienter. Because Plaintiff could not confirm scienter until March 22, 2022, the statute of limitations did not expire

until March 22, 2024, and this Complaint was timely filed on February 20, 2024. In other words, Plaintiff did not have evidence of a "strong inference of scienter" until online court dockets revealed that the phantom advisory fee was being charged to other investors in EquipmentShare.

The Supreme Court of the United States has held that a claim is not discovered until the "plaintiff can set forth facts in the complaint showing that it is 'at least as likely as' not that the defendant acted" with scienter. *Merck & Co. v. Reynolds*, 559 U.S. 633, 634, 130 S. Ct. 1784, 1788, 176 L. Ed. 2d 582 (2010). Although Plaintiff was technically aware of the monitoring fee on February 20, 2021, it was not until over a year later that Plaintiff discovered Defendants had acted with scienter and the fee was unlawful when Plaintiff became aware of the Republic Maximal lawsuit against Defendants was filed herein on March 22, 2022. Therefore, the statute of limitations for the purposes of the Exchange Act claims did not expire until March 22, 2024. Accordingly, when construing all inferences in favor of Plaintiff, there is no question the Exchange Act claim is timely. Additionally, for the same reasons, Plaintiff's derivative Section 20(A) claim is properly plead and should survive the Romulus Defendants' Motion to Dismiss.

### F.  The Fraud, Contract, and Fiduciary Claims Are Not Time-Barred

The Romulus Defendants submit that the Fraud, Breach of Contract, and Breach of Fiduciary Duty claims are barred by Delaware law's three-year statute of limitations. While Plaintiff admits signing the Subscription Agreement and Limited Partnership Agreement on February 26, 2020, Plaintiff had absolutely no way of knowing the wrongful act until March 22, 2022, when a lawsuit was filed by a separate investor confirming the advisory fee charges were fictitious. The statute of limitations did not begin to run until March 22, 2022. Accordingly, the Fraud, Contract, and Breach of Fiduciary duty claims are timely under the three-year statute of limitations under Delaware law, as the Complaint herein was filed timely on February 20, 2024.

At this juncture, these claims are properly plead and not subject to dismissal.

### G. The Massachusetts Security Act Claim is Sufficiently Plead

Under Section 410(a)(2) of the Massachusetts Security Act, a plaintiff must plead that "(1) the defendant 'offers or sells a security'; (2) in Massachusetts; (3) by making 'any untrue statement of a material fact' or by omitting to state a material fact; (4) the plaintiff did not know of the untruth or omission; and (5) the defendant knew, or 'in the exercise of reasonable care [would] have known,' of the untruth or omission." *Marram v. Kobrick Offshore Fund, Ltd.,* 809 N.E.2d 1017, 1026 (Mass. 2004).  Here, there is no question Plaintiff has plead all of the elements of this claim.  Throughout Plaintiff's Complaint, there are allegations that Neil Chheda, a Massachusetts individual who controlled the Romulus entities, made omissions and untrue statements regarding the phantom monitoring fees in connection with the sale of a security.  Accordingly, and especially when construing all inferences in favor of Plaintiff, Plaintiff's Massachusetts Security Act claims are sufficiently plead and should survive the Romulus Defendants' Motion to Dismiss.

### H. The Breach of Fiduciary Duty Claim is Sufficiently Plead

The Romulus Defendants assert that the Breach of Fiduciary duty claim fails because the Limited Partnership Agreement contains an exculpation clause which precludes Plaintiff's breach of fiduciary duty claim.  However, the Romulus Defendants entire argument is based on the premise that the phantom advisory fees are permitted under the relevant contracts.  The phantom advisory fees are not permitted under the relevant contracts and Plaintiff's breach of fiduciary duty claim, with inferences construed in Plaintiff's favor, is not saved by the exculpatory provision in Section 12.1 of the Limited Partnership Agreement.  That section only protects conduct which is conducted in "good faith" and in "the best interest of the Partnership."  There is no plausible way that the Romulus Defendants' charging of the phantom advisory fees could be construed as being

done in "good faith" or in "the best interest of the Partnership." Therefore, the exculpatory clause does not protect the Romulus Defendants from Plaintiff's breach of fiduciary duty claim. The breach of fiduciary claim is properly plead and in construing all inferences in Plaintiff's favor, the claim should survive the Romulus Defendants' motion to dismiss.

### I. The Breach of Contract Claim is Sufficiently Plead

To allege a breach of contract, "a plaintiff must show … a breach of the [defendant's] contractual obligations. *Obsidian Fin. Grp., LLC v. Identity Theft Guard Sols.*, 2021 WL 1578201 at * 5 (Del. Ch. Apr. 22, 2021). Here, Defendants breached Sections 2.3 and 5.1.1 of the Limited Partnership Agreement because the phantom monitoring fees were not associated with the Partnership, as explained above. The phantom monitoring fees, contrary to the Romulus Defendants' consistent assertions, were not contemplated and/or authorized by any of the pertinent documents. Accordingly, the Romulus Defendants breached their contractual obligations to Plaintiff by charging the phantom monitoring fees. Therefore, Plaintiff has sufficiently plead its breach of contract claim and the Romulus Defendants' Motion to Dismiss must be denied.

### IV. CONCLUSION

All of the Romulus Defendants' arguments supporting dismissal are premised on the idea that the phantom monitoring fees were authorized by the relevant contracts. As explained more fully above, the monitoring fees were not authorized by the contracts. Plaintiff relied upon the negotiations and language in the contracts in order to make an investment in the Fund. By charging the phantom monitoring fees, the Romulus Defendants are liable for all of the causes of action set forth in Plaintiff's Complaint. Therefore, the Romulus Defendants' Motion to Dismiss should be denied in its entirety.

Dated: June 17, 2024

/s/ *Charles A. Waters*
Charles A. Waters, BBO #631425
SHEEHAN PHINNEY BASS & GREEN PA
28 State Street 22nd Floor
Boston, MA 02109
Tel: (617) 897-5600
cwaters@sheehan.com

and

/s/ *Alan M. Wolper*
Alan M. Wolper (as *Pro Hac Vice*)
UB GREENSFELDER LLP
500 West Madison Street, Suite 3600
Chicago, Illinois 60661
Tel: (312) 658-6500
Fax (216) 583-7001
awolper@ubglaw.com

/s/ *M. Salman Shah*
M. Salman Shah (as *Pro Hac Vice*)
UB GREENSFELDER LLP
65 East State Street, Suite 1100
Columbus, Ohio 43215
Tel: (614) 229-0000
Fax (216) 583-7001
mshah@ubglaw.com

**Counsel for Plaintiff**

4878-5245-1270, v. 1

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document has been filed through the ECF system and will be sent electronically to the registered participants identified on the Notice of Electronic Filing and by first-class mail to those non-registered participants identified on the Notice of Electronic Filing.

                                           */s/ Charles M. Waters*
                                           Charles M. Waters

4878-5245-1270, v. 1